# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| SHIPYARD BREWING COMPANY, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:17-cv-04079-NKL ) ) |
| LOGBOAT BREWING COMPANY, LLC, et al., | ) ) ) |
| Defendants. | ) |

## ORDER

Defendant Logboat Brewing Company moves to dismiss Count V of the Amended Complaint for failure to state a claim. Doc. 39. Plaintiff Shipyard Brewing Company, LLC opposes the motion, but asks in the alternative for leave to amend. For the reasons discussed below, Logboat's motion to dismiss Count V is granted in part, and Shipyard is granted seven days from the date of this Order in which to file an amended Count V.

**I.     Background**

Shipyard alleges that it is a craft brewery with registered trademarks that it uses in connection with its goods and services, most notably, its varieties of beer. Count V is a claim for defamation against Logboat. Shipyard alleges in the "Facts" section of the Amended Complaint:

> 33.    Shortly [after filing this lawsuit on May 15, 2017], one star reviews begin appearing on Shipyard's Facebook page from Facebook members living in or near Columbia, Missouri. Most of the comments referenced the lawsuit. All of the comments directed negative sentiments towards Shipyard. One of the commenters appears to be a relative of Logboat co-founder Judson Ball.
>
> 34.    Presently, 193 comments appear on Shipyard's Facebook page. Of those, 189 comments are of the nature described above.

> 35. Upon information and belief, Logboat, through its principals or its agents acting at the encouragement of and for the benefit of its principals, made defamatory statements concerning Shipyard to members of the general public as retribution for Shipyard filing suit.
>
> 36. The hundreds of one star reviews on Shipyard's Facebook page, as well as negative articles in the press, are a result of Logboat's actions.
>
> 37. Such defamatory statements include, but are not limited to, suggestions that Shipyard is pursuing this lawsuit for ulterior motives, unsubstantiated claims that Shipyard is a trademark bully, and general insults concerning Shipyard's business and the quality of its beers.

Doc. 38, p. 9. Under "Count V—Defamation," Shipyard alleges:

> 82. Logboat, through its principals, or its agents acting at the encouragement of and for the benefit of its principals, made defamatory statements as described herein concerning Shipyard to members of the general public as retribution for Shipyard filing suit.
>
> 83. Logboat was at fault for making such statements.
>
> 84. Such statements tended to expose Shipyard to hatred, contempt, or ridicule, or to deprive Shipyard the benefit of public confidence, as evidenced in the hundreds of one star reviews on Shipyard's Facebook page.
>
> 85. Logboat's statements were heard by members of the general public in and around Logboat's location in Columbia, Missouri.
>
> 86. Shipyard's reputation was damaged by Logboat's defamatory statements.

*Id.*, pp. 15-16.

## II. Discussion

Logboat argues that Count V should be dismissed for three reasons: Shipyard does not plead sufficient facts, Shipyard fails to allege the falsity of any alleged defamatory statement, and to the extent any statement is alleged, such statement is an opinion and therefore not

actionable. Doc. 40, p. 2.

For purposes of deciding a motion to dismiss for failure to state a claim, a court accepts the factual allegations contained in the complaint as true, and liberally construes the allegations in favor of the plaintiff. *Eckert v. Titan Tire Corp.,* 514 F.3d 801, 806 (8th Cir. 2008). To survive a motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678).

In analyzing a claim for defamation, Missouri courts ask first whether the statement is defamatory at all and if so, whether a privilege, such as the one applicable to statements of opinion, shelters the maker from legal action. *See Kennedy v. Microsurgery & Brain Research Inst.,* 18 S.W.3d 39, 44 (Mo. App. 2000) (citing *Pape v. Reither,* 918 S.W.2d 376, 380 (Mo. App. 1996), and *Diez v. Pearson,* 834 S.W.2d 250, 252 (Mo. App. 1992)). The elements of a claim of defamation are: (1) the publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation. *Smith v. Humane Society of U.S.,* 519 S.W.3d 789, 798 (Mo. 2017) (en banc) (citing *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 598-99 (Mo. 2013) (en banc)).

### A.     Sufficiency of the facts pleaded

With respect to sufficiency of the facts pleaded, Logboat argues that while Count V alleges "Logboat … made defamatory statements as described herein concerning Shipyard to members of the general public as retribution for filing suit[,]" the Amended Complaint does not

describe what defamatory statements Logboat made. Doc. 40, p. 3 (quoting Doc. 38, ¶ 82). However, in the "Facts" section of the Amended Complaint, Shipyard alleges that Logboat made defamatory statements through its principals or its agents to members of the general public, Doc. 38, ¶ 35, and two paragraphs later, alleges that "[s]uch defamatory statements include, but are not limited to, suggestions that Shipyard is pursuing this lawsuit for ulterior motives, unsubstantiated claims that Shipyard is a trademark bully, and general insults concerning Shipyard's business and the quality of its beers[,]" *id.*, ¶ 37. Shipyard has therefore sufficiently identified the allegedly defamatory statements that Logboat made.

B. **Allegations of falsity**

Logboat next argues that Shipyard does not plead the falsity of any statement that Logboat made. Doc. 40, p. 3. Shipyard responds that it did so when it alleged that "[s]uch defamatory statements include, but are not limited to, suggestions that Shipyard is pursuing this lawsuit for ulterior motives, *unsubstantiated* claims that Shipyard is a trademark bully, and general insults concerning Shipyard's business and the quality of its beers." Doc. 44, p. 5 (emphasis in original). Shipyard continues, "The word 'unsubstantiated' is defined as 'not proven to be true…. In other words, Logboat's claims that Shipyard is a trademark bully are false." *Id.*, pp. 5-6 (citing www.meriam-webster.com/dictionary/unsubstantiated). Logboat replies that the definition quoted by Shipyard—"not proven to be true"—"does not include or reference the word false or falsity in general[,]" and that Shipyard has therefore failed to plead falsity with respect to its defamation claim. Doc. 46, p. 3. But Logboat has construed the allegations in its favor, when they must be construed in Shipyard's favor for purposes of the motion to dismiss. *See Eckert,* 514 F.3d at 806. A reasonable inference may be drawn that in alleging Logboat made an "unsubstantiated" claim, Shipyard has alleged that Logboat made a false claim. Therefore, Logboat's argument concerning the insufficiency of the pleading of

falsity fails with respect to this statement.

Shipyard did not specifically respond to Logboat's argument concerning the sufficiency of pleading of falsity of the other two statements, concerning "ulterior motives" and "general insults." But Shipyard elsewhere in its response argues that Logboat's statements imply assertions of objective facts, or undisclosed defamatory facts, and are therefore actionable. Those arguments will be discussed below.

C. **Statements of opinion**

Finally, Logboat argues that Shipyard has failed to allege an actionable statement under Missouri's defamation law because any alleged statements merely qualify as opinions. Doc. 40, pp. 3-4. Statements of opinion are privileged under the First Amendment's guarantee of freedom of speech and cannot be the basis of a defamation claim. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 283 (1964). Missouri has adopted "an absolute privilege for expressions of opinion, broadly holding that any alleged defamatory statements that 'can be characterized as opinions,' are 'subject to the First Amendment absolute privilege.'" *Smith*, 519 S.W.3d at 799 (quoting *Henry v. Halliburton*, 690 S.W.2d 775, 787 (Mo. 1985) (en banc)). "[T]here can be no liability under state defamation law for statements of opinion." *Id*. (citing *Gertz*, 418 U.S. at 339–40).

Nonetheless, "a statement labeled as an 'opinion' can be the basis of an actionable defamation claim if the alleged 'opinion' statement implies an assertion of objective facts." *Smith*, 519 S.W.3d at 799 (citing *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18 (1990)). *See also Pape v. Reither,* 918 S.W.2d 376, 380 (Mo. App. 1996) (explaining that the privilege for pure opinion "does not apply when the statement of opinion necessarily implies the existence of undisclosed defamatory acts"). But this exception does not swallow the rule. To qualify as defamatory under Missouri law, opinion statements must be provable as false. *Id*. In drawing

5

the line between opinion and fact, Missouri courts ask whether "a reasonable factfinder could conclude that the statement implies an assertion of objective fact." *Id*. (quoting *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 314 (Mo. 1993) (en banc). *See also Clinch v. Heartland Health,* 187 S.W.3d 10-17-18 (Mo. App. 2006) ("Whether a statement is fact or opinion is a question of law, and we make this determination based on the totality of the circumstances surrounding a given statement.") (internal citation omitted)).

The three, allegedly defamatory statements attributed to Logboat are its "suggestions that Shipyard is pursuing this lawsuit for ulterior motives," "unsubstantiated claims that Shipyard is a trademark bully," and "general insults concerning Shipyard's business and the quality of its beers." A reasonable fact finder could conclude that the first statement, "that Shipyard is pursuing this lawsuit for ulterior motives," implies an assertion of objective fact, based on the totality of the circumstances. An "ulterior motive" is simply "a secret reason." *See* https://www.merriam-webster.com/dictionary/ulterior%20motive. Whether Shipyard has a reason for filing the lawsuit, that it has kept secret and beyond the reasons expressly stated in the complaint, is capable of being proven. Under Missouri law, the alleged statement is more than mere opinion.

The other two alleged statements, concerning "unsubstantiated claims that Shipyard is a trademark bully," and "general insults about Shipyard's business and the quality of its beers," are opinions. As discussed above, the allegation that Logboat made an "unsubstantiated" claim is sufficient to allege a falsity, but even so, calling Shipyard a trademark bully is merely an expression of an opinion, and is a statement similar to ones that that Missouri courts have found do not support a claim of defamation. In *Smith,* 519 S.W.3d at 800-01, for example, the Missouri Supreme Court held that use of the phrase "puppy mill" in a report describing a kennel was not actionable. The phrase was "'imprecisely used' as 'rhetorical hyperbole,' and a 'lusty

6

and imaginative expression of [ ] contempt[.]" *Id.* (citing *Milkovich*, 497 U.S. at 16–17, and *Nazeri v. Mo. Valley College,* 860 S.W.2d 303, 314 (Mo. 1993) (en banc) (considering whether a term is too "imprecise" to be actionable)). Although "puppy mill" carried a negative connotation, a negative connotation alone does not make a statement actionable. *Id.* at 801. The Missouri Supreme Court further held that statements about the "severity" of the business's violations, and that it was one of "worst licensed kennels in the state", were subjective assessments that did not state an actionable claim for defamation. *Id.* at 801-02. *See also Pujols v. Pujols Family Foundation,* 2017 WL 4310436, * 5 (E.D. Mo. Sept. 28, 2017) (statement that "these two young men have ruined many lives" was not an objective fact capable of being proven as false; what constitutes "ruining a life" is subjective, and the opinion, while a pejorative one, was not actionable in defamation as a matter of law) (citing *Old Dominion Branch No. 496, Nat'l Letter Carriers, AFL-CIO v. Austin,* 418 U.S. 264, 284-85 (1974) (finding the terms "scab" and "traitor" were protected speech and not subject to liability under state defamation laws)).

Similar to the statements in *Smith,* the phrase "trademark bully" is an imprecise description or subjective assessment of Shipyard's conduct, and cannot be proven as an objective fact. The phrase may carry a negative connotation, but that alone does not suffice to make it defamatory. Likewise, general insults about Shipyard's business and the quality of its beers are merely subjective assessments. Such expressions of opinion are protected by absolute privilege under the First Amendment.

Shipyard argues generally that statements do not qualify as pure opinion when they contain assertions of objective facts that can be verified as true or false. Doc. 44, pp. 6-7 (citing *Castle Rock Remodeling, LLC v. Better Business Bureau,* 354 S.W.3d 234, 241 (Mo. App. 2011), and *Pape v. Reither,* 918 S.W.2d 376, 382 (Mo. App. 1996) (explaining that an objective fact is one that can be verified as true or false)). But Shipyard does not suggest how the "trademark

bully" and "general insults" statements could be verified as true or false. *See* Doc. 44, pp. 6-7.

Shipyard also argues that the allegedly defamatory statements imply the existence of undisclosed defamatory facts, and are therefore actionable. Doc. 44, p. 8 (citing *Pape,* 918 S.W.2d at 380; and Restatement (Second) of Torts § 566, cmt. b (1977)). It states that its defamation claim arises out of the marked increase in negative comments that the public posted on Facebook after the lawsuit was filed, and which Logboat's principals or agents encouraged by making defamatory statements to the members of the public. Shipyard argues that it "should be allowed to pursue the undisclosed defamatory acts that give rise to the negative comments through discovery." *Id.* The argument is not persuasive. Nothing that Shipyard alleges in connection with the "trademark bully" and "general insults" statements implies the existence of undisclosed defamatory *facts.* As discussed above, Shipyard has alleged statements of opinion. Shipyard does not even suggest what the undisclosed defamatory facts might be.

Finally, Shipyard argues that the "trademark bully" statement is defamatory *per se* because it falsely imputes conduct to Shipyard that is incompatible with its business and therefore actionable. Doc. 44, p. 7 (citing *Pape,* 918 S.W.2d at 380). Shipyard says that it is required by law to protect its trademarks or risk losing them, and that it is good business practice to do so because the maintenance of strong marks is important to its brand. *Id.*, pp. 7-8. Whether the statement is defamatory *per se* does not change the outcome, however. In the case that Shipyard cites, *Pape*, a construction project owner wrote a letter to the construction firm and others, attempting to enforce settlement of a dispute that had arisen over the project. In the letter, the project owner stated, "It is my position that you participated in fraudulent and or [sic] illegal acts." 918 S.W.2d at 380. Mr. Pape, an employee of the construction firm who had worked on the project, sued the project owner for defamation. The Court of Appeals held that the statement clearly identified Mr. Pape and that the subject of the statement was not vague or imprecise.

8

"Furthermore," the court explained, "statements which falsely impute conduct incompatible with one's business, trade or profession are defamatory per se." *Id.* (citation omitted). The court held that "[i]t is clear that the allegation of 'fraudulent and or illegal acts' pertains to a professional context. Fraudulent or illegal conduct committed in one's professional endeavors is, of course, incompatible with those endeavors, so that this statement is defamatory per se (assuming, as we must, that appellant can demonstrate its falsity)." *Id.* The court "next inquire[d] whether some privilege applies to this statement which prevents it from being actionable[,]" such as "[s]tatements of opinion [which] are protected by an absolute privilege…rooted in the First Amendment[.]" *Id.* The court held that the statement was a protected opinion, inasmuch as it was qualified by the phrase, "It is my position[.]" *Id.* "[I]t is impossible to interpret this statement as positing a verifiable proposition, and verifiability is the crux of the fact/opinion distinction in defamation law." Thus here, even if the "trademark bully" statement is defamatory *per se*, it does not establish an actionable claim of defamation. As discussed above, the statement is an expression of opinion and therefore protected by absolute privilege under the First Amendment.

To summarize, the Court has held that Shipyard has stated a claim with respect to Logboat's alleged statement that Shipyard is pursuing this lawsuit for ulterior motives, but has failed to state a claim with respect to the alleged statements concerning unsubstantiated claims that Shipyard is a trademark bully, and general insults concerning Shipyard's business and the quality of its beers.

### D. Request for leave to amend

Finally, Shipyard has asked for leave to amend if the Court dismisses Count V of the Amended Complaint. Doc. 44, p. 9. Shipyard points out that leave to amend should be freely granted. *Id.* (citing Fed. R. Civ. P. 15(a)(2), and *Tyler v. Armontrout,* 917 F.2d 1138, 1143 (8th

Cir. 1990)). It further argues that none of the "limited circumstances" justifying denial of leave exist, such as undue delay, bad faith on the part of the movant, futility of amendment, or unfair prejudice to the nonmovant. *Id.* (citing *Roberson v. Hayti Police Dep't,* 241 F.3d 992, 995 (8th Cir. 2001)). Logboat opposes amendment, on the basis that the deadline to amend the pleadings, which has already been extended once, passed two months ago on October 21, 2017, Doc. 37, and that the deadline for completion of discovery is February 3, 2018, Doc. 43. Because the Court has dismissed at least part of Count V, and leave to amend should be freely granted, the Court will permit Shipyard to file an amended Count V within seven days of the date of this Order, and as consistent with this Order. Although the discovery deadline is February 3, 2018, a defamation claim has already been part of this lawsuit since at least October 17, 2017, so Logboat should not be unfairly prejudiced by amendment of Count V. If Logboat requires additional time to complete discovery with respect to amendments to the claim, it may make an appropriate motion.

**III. Conclusion**

Defendant Logboat Brewing Company, LLC's motion to dismiss Count V, Doc. 39, is granted in part, consistent with this Order. Plaintiff Shipyard Brewing Company, LLC shall have seven days from the date of this Order in which to file an amended Count V, consistent with this Order.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 29, 2017
Jefferson City, Missouri